KRISTEN CLARKE
Assistant Attorney General
KAREN D. WOODARD
Chief
VALERIE L. MEYER (AZ Bar No. 023737)
Deputy Chief
ROBERT GALBREATH (DC Bar No. 460389)
Senior Trial Attorney
United States Department of Justice
4 Constitution Square
150 M Street, N.E., Suite 9.1140
Washington, DC  20530
Telephone: (202) 353-9731
Facsimile: (202) 514-1005
Email: Robert.Galbreath@usdoj.gov
K. TYSON SHAW (PA Bar No. 314323)
United States Attorney's Office, District of Kansas
500 State Avenue, Suite 360
Telephone: (913) 551-6685
Facsimile: (913) 551-5641
Email: Tyson.Shaw@usdoj.gov

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Civil Action No. |
| v. | **COMPLAINT** |
| State of Kansas (Department of Health and Environment) | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff United States of America, on behalf of Stacey Gonzales, alleges by the

undersigned attorneys:

1. This civil action is brought under the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended, 38 U.S.C. § 4301, *et seq.* ("USERRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b).

3. Venue is proper in this judicial district under 38 U.S.C. § 4323(c)(2) because Defendant State of Kansas Department of Health and Environment ("KDHE") maintains a place of business in this judicial district. Additionally, venue is proper under 28 U.S.C. § 1391(b) because the events or omissions giving rise to this action occurred in this judicial district.

**PARTIES**

4. Plaintiff United States files this action in order to obtain relief for Stacey Gonzales, who resides in Garden City, Kansas, which is located within Finney County, Kansas. Finney County is within the jurisdiction of this Court.

5. Defendant KDHE is a subdivision of the state government which provides health and environment-related services to the State of Kansas, including by allocating state and federal funding to initiatives staffed at the county level. KDHE maintains a place of business at 1000 SW Jackson, Suite 540, Topeka, Kansas 66612-0461, within the jurisdiction of this court.

6. Defendant KDHE is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A), and is subject to suit under USERRA under 38 U.S.C. § 4323(a).

**FACTUAL ALLEGATIONS**

7. Stacey Gonzales has been a member of the United States Army National Guard since 1998. She currently holds the rank of Staff Sergeant (E-6). During her time with the National Guard, Gonzales has deployed overseas on three separate occasions, including twice to Iraq and once to Kuwait.

8. The Finney County, Kansas Health Department ("FCHD") undertakes county public health initiatives partly through funding distributed by KDHE in the form of grants.

9. During relevant times, the KDHE's Bureau of Disease Control and Prevention, STD/HIV Disease Intervention and Prevention Section ("KDHE STD Section"), provided funding to FCHD for sexually-transmitted disease intervention and prevention services ("KDHE STD Grant"). This funding enabled FCHD to hire one Disease Intervention Specialist ("DIS") and gave KDHE the right to approve the individual hired.

10. In or around May 2001, with the approval of KDHE, FCHD hired Gonzales as its DIS, to service the KDHE STD Grant. Gonzales successfully performed this position for nine years after completing the necessary training and certification requirements.

11. As a DIS, Gonzales was tasked with traveling throughout western Kansas and performing disease intervention and prevention activities, along with maintaining records of those activities on behalf of KDHE. During this time, Gonzales was paid by

and received performance evaluations from FCHD, and during the period of the events described herein, was nominally supervised by FCHD supervisor Ashley Goss.

12. However, Gonzales directly reported to KDHE STD Section Deputy Director Jennifer VandeVelde with respect to her daily DIS activities. KDHE purports to have conducted its own evaluations of Gonzales' performance and it influenced FCHD's performance ratings.

13. Upon information and belief, VandeVelde also wrote KDHE's DIS grants, audited the DIS activities, and reported their performance to her supervisors at KDHE.

14. Throughout Gonzales' employment by KDHE as a DIS, KDHE periodically renewed its funding of the DIS position via the KDHE STD Grant to FCHD.

15. KDHE had to certify, on a quarterly basis, that FCHD was meeting program requirements for the reporting period. At no time during or prior to March 2010 did KDHE fail to certify that FCHD was meeting program requirements or otherwise advise FCHD that program requirements for the KDHE STD Grant were not met.

16. In January 2010, Gonzales learned about an opportunity to undergo training in conjunction with her military service at Air Assault School, a 10-day course.

17. On or about March 22, 2010, Gonzales discussed the possibility of Air Assault School with VandeVelde. After Gonzales mentioned needing time off in order to attend the Air Assault School, VandeVelde stated to Gonzales that "you need to choose between military service and your career" or words to that effect.

18. VandeVelde's March 2010 comments were not the first time she made statements implying that Gonzales' military service was affecting her employment status

4

with KDHE. After Gonzales returned from a 2007 military deployment, she had a conversation with VandeVelde regarding a disputed patient contact field record. During that conversation, VandeVelde questioned Gonzales about injuries Gonzales had received while on military deployment and whether those injuries would have an effect on Gonzales' ability to do her job as a DIS. VandeVelde asked this question in a hostile tone and Gonzales understood her to be implying that Gonzales' service injuries might be a problem at work. Gonzales responded "no" and also told VandeVelde that such a question about her military service was inappropriate.

19. On April 9, 2010, Gonzales received orders to report for a period of active duty to begin on October 20, 2010. Gonzales verbally confirmed to Goss that she had received formal orders. Gonzales had already notified Goss in January 2010 that she was likely to be deployed later in 2010.

20. Upon information and belief, on or shortly after April 9, 2010, Goss advised VandeVelde of Gonzales' orders to deploy.

21. On April 23, 2010, Derek Coppedge (Director of the KDHE STD Section and VandeVelde's supervisor) provided Goss with a letter detailing concerns with Gonzales' performance, and indicating that KDHE would reevaluate her performance on July 15, 2010. This letter indicated that if Gonzales' performance did not dramatically improve, KDHE would discontinue the contract effective August 1, 2010. As Gonzales' direct supervisor, VandeVelde provided input to Coppedge for the letter. Upon information and belief, this letter was the first occasion KDHE had ever suggested that Gonzales' performance might warrant termination.

22. On or before April 28, 2010, VandeVelde advised FCHD via a comment in a quarterly certification that FCHD failed to meet program requirements for the period from January to March 2010, but that payment authorization was being allowed while the situation was corrected.

23. Upon information and belief, during the 2010 Governor's Public Health Conference held on April 26-28, 2010, VandeVelde was overheard discussing the possibility of removing funding for Gonzales' position with Goss. During that conversation, VandeVelde stated, "well, I'll just pull the grant," and "tell [Gonzales] the grant was pulled."

24. Upon information and belief, VandeVelde warned the individual who overheard the conversation not to repeat the contents of that conversation to Gonzales, and further commented that Gonzales was overpaid and "never there" or words to that effect.

25. On or about April 29, 2010, Gonzales began a planned medical leave unrelated to her military service.

26. On June 7, 2010, Coppedge sent an internal email to VandeVelde and his supervisor, Brenda Walker, then-Director of KDHE's Bureau of Disease Control and Prevention, memorializing that KDHE was relocating the KDHE STD Grant from FCHD to another county. The email did not reference Gonzales' alleged performance problems or failure to meet program requirements as the basis for relocating the grant.

27. Upon Gonzales' return to work on or about June 13, 2010, Goss told Gonzales that KDHE had removed the funding for Gonzales' position, and as a result, Gonzales was out of a job.

6

28. On June 15, 2010, Gonzales received a performance evaluation from FCHD containing ratings that were lower than her ratings in previous performance reviews. These lower ratings were informed by feedback from KDHE. Gonzales also was provided with a salary increase by FCHD of 3.55% per the recommendation of Goss.

29. On June 30, 2010, Gonzales' employment as a DIS for FCHD was terminated.

30. On or before August 12, 2010, KDHE officials certified that FCHD met program requirements for the quarterly reporting period of April to June 2010.

31. From October 20, 2010 to December 29, 2011, Gonzales completed active duty service.

32. Shortly after her return from service, Gonzales sought help from the Employer Support of the Guard and Reserve ("ESGR") regarding her termination but was told that ESGR had a conflict of interest.

33. On November 28, 2018, after being made aware that she could file a USERRA complaint with the Veterans' Employment and Training Service (VETS), Gonzales filed such a complaint against KDHE. This matter was investigated by VETS acting for the Secretary of Labor under 38 U.S.C. § 4322.

34. In May 2019, VETS completed its investigation and advised KDHE that it was in violation of USERRA. On May 31, 2019, Gonzales requested her case be forwarded to the U.S. Attorney General's Office for further review and the matter was referred for the Department of Justice.

7

## CLAIM FOR RELIEF

## Termination in Violation of USERRA

35. The United States incorporates herein the factual allegations set forth in paragraphs 3-34.

36. Pursuant to 38 U.S.C. § 4311, USERRA prohibits discrimination in employment against an individual on the basis of his or her military service. Specifically, 38 U.S.C. § 4311 provides that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

37. KDHE violated Section 4311 of USERRA by eliminating Gonzales' DIS position and terminating her on the basis of her membership in the United States Army National Guard, her absence to perform military service, and/or her military service obligations.

38. VandeVelde's statements about Gonzales' military service and the timing of the elimination of Gonzales' DIS position shortly after being notified of her deployment and before her deployment began demonstrate that Gonzales' termination was not part of a performance action, but was a termination on the basis of Gonzales' service in the United States Army National Guard.

39. KDHE's violation of USERRA Section 4311 was willful under 38 U.S.C. § 4323(d)(1)(C) in that KDHE showed reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

40. Because of KDHE's actions in violation of USERRA, Gonzales has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter judgment against KDHE and, further, grant the following relief:

A. Declare that KDHE's elimination of Gonzales' DIS position and termination of her employment were unlawful and in violation of USERRA;

B. Order KDHE to comply fully with the provisions of USERRA by paying Gonzales for her lost wages and other benefits suffered by reason of KDHE's violations of USERRA;

C. Declare that KDHE's violations of USERRA were willful;

D. Award Gonzales liquidated damages in an amount equal to the amount of her lost wages and other benefits suffered by reason of KDHE's willful violations of USERRA, as authorized under 38 U.S.C. § 4323(d)(1)(C);

E. Award prejudgment interest on the amount of lost wages and benefits due;

F. Grant such other and further relief as may be just and proper together with the costs and disbursements of this lawsuit.

## JURY DEMAND

The United States hereby demands a jury trial under Federal Rule of Civil Procedure

38.

Date:  June 27, 2022

                                      Respectfully submitted,

                                      Kristen Clarke
                                      Assistant Attorney General
                                      Civil Rights Division

BY:       KAREN D. WOODARD (MD Bar)
              Chief
              Employment Litigation Section

              VALERIE L. MEYER (AZ Bar No. 023737)
              Deputy Chief

*/s/ Robert L. Galbreath*
ROBERT GALBREATH (DC Bar No. 460389)
Senior Trial Attorney
United States Department of Justice
4 Constitution Square
150 M Street, N.E., Suite 9.1140
Washington, DC  20530
Telephone: (202) 353-9731
Facsimile: (202) 514-1005
Email: Robert.Galbreath@usdoj.gov

DUSTON J. SLINKARD
United States Attorney

*/s/ K. Tyson Shaw*
K. TYSON SHAW (PA Bar No. 314323)
Assistant United States Attorney
United States Attorney's Office, District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Telephone: (913) 551-6685
Facsimile: (913) 551-5641
Email: Tyson.Shaw@usdoj.gov

*Counsel for Plaintiff*